IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **BRIAN JONES, #K56957,** ) | |
| ) | |
| **Plaintiff,** ) | |
| vs. ) | Case No. 19-cv-01307-SMY |
| ) | |
| **BART LINN,** ) | |
| **MAC-SHANE FRANK,** ) | |
| **SCOTT THOMPSON,** ) | |
| **WANGLER,** ) | |
| **HECK,** ) | |
| **WARDEN LOVE,** ) | |
| **DIANE SKORCH,** ) | |
| **FRANK LAWRENCE,** ) | |
| **C/O RODMAN, and** ) | |
| **BILLY STANHOUSE,** ) | |
| ) | |
| **Defendants.** ) | |

## **MEMORANDUM AND ORDER**

**YANDLE, District Judge:**

Plaintiff Brian Jones, an inmate of the Illinois Department of Corrections filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while he was incarcerated at Pinckneyville Correctional Center ("Pinckneyville") and Menard Correctional Center ("Menard). He claims violations of the First, Eighth, and Fourteenth Amendments and also makes a claim for indemnification under Illinois state law. (*Id.*). Plaintiff seeks monetary damages. (*Id.*).

This case is now before the Court for preliminary review of the Complaint under 28 U.S.C. § 1915A, which requires the Court to screen prisoner Complaints to filter out non-meritorious claims. 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

**The Complaint**

Plaintiff makes the following allegations in his Complaint (Doc. 1): Plaintiff was interviewed about gang activity on April 29, 2019 by members of the Intel Unit including Investigator Linn. Plaintiff told Linn he was not involved in gang activity, minds his own business, and had no information about gang activity. Linn screamed at him, "You don't have no information for me? Get the f*** out of my office and you will regret that you don't have information for me." Prior to this incident, Plaintiff had been at Pinckneyville since November 2016 and had not received any disciplinary tickets related to gang activity. He had one minor disciplinary ticket in 2017 and received a verbal warning.

On April 30, 2019, an officer told Plaintiff he was moving out of 4 house (where he had been housed his entire incarceration) and to pack his property. When Plaintiff arrived at 2 house, Lt. Wangler told him he had a lot of property and he was going to enjoy taking it. Wangler pulled items out of Plaintiff's property boxes and threw them on the ground. He took food, hygiene items, sheets, clothing, shoes, books, magazines, a chess set, mother's day cards, legal work, and legal books. Wangler asked other inmates if they wanted any of the property and told Plaintiff he was going to throw the property away. Plaintiff told Wangler he wanted to send his property home.

Wangler escorted Plaintiff to the personal property room and introduced him as "the dumba** who wants to send his property home." Plaintiff asked Wangler why he was taking his property because the majority fit in his property box. He also asked for the return of his legal papers and mother's day cards. Wangler told him to "shut the f*** up before he beat his a**" and threatened to take him to segregation. Plaintiff signed a $70 money voucher to send his property home. Wangler did not write Plaintiff a shake down slip, contraband slip, or disciplinary report.

After Plaintiff returned to his cellhouse, he called his family, told them about Wangler's

actions, and instructed them to call the Warden and IDOC Director. The next day, Plaintiff was accosted by Wangler who yelled at him about his phone call. Wangler told Plaintiff it did not matter who he called or complained to, no one could help him. The Intel Unit/Internal Affairs must have told Wangler about the phone call even though he was not authorized to hear it.

Plaintiff filed grievances on April 30 and May 1, 2019. Three weeks later, Wangler told other staff members in the chow hall that Plaintiff had been filing grievances against him. Plaintiff filed another grievance about Wangler's harassment and threats. Plaintiff was not granted any relief in response to his grievances. Lt. Wangler and Internal Affairs responded that they did not know Plaintiff and did not recall any such incidents. Internal Affairs refused to look at the tape of Wangler taking Plaintiff's property and accosting him.

Plaintiff wrote to the Governor, IDOC Director, Deputy Director, IDOC Chief of Investigations, three state representatives, and other organizations. He told them what he was going through at Pinckneyville and also told them about Pinckneyville staff's racist and illegal activity. After he filed his grievances, Linn and other Intel Unit officers called inmates to their office and offered them TVs, hot pots, and other property in exchange for information about Plaintiff. Plaintiff also discussed racism, harassment, intimidation, verbal abuse, physical abuse, fabricated disciplinary reports, farcical grievance procedures, the farcical adjustment committee, and the taking of the day room and yard/recreational time in the letter. He has been filing grievances and his lawyer has been writing the IDOC Director and the Warden about Pinckneyville staff's racist and illegal activity since 2017 when a staff member told him he was his master.

When the letters reached the Governor and others, Plaintiff was told he was not allowed to come to the day room because he had f***ed up. Pinckneyville is known for beating up inmates on a daily basis, and Plaintiff felt vulnerable and knew retaliation would come quick. He wrote a

3

grievance on the taking of his day room and let it be known that he did not feel safe, thought staff would physically harm him, and he would protect himself if necessary. He was placed in disciplinary segregation under investigation on August 16, 2019 by Lt. Frank.

Plaintiff was interviewed by Frank on August 27, 2019 about his recent grievances and told he was placed in segregation for his safety and staff safety. He told Frank he did not feel safe at Pinckneyville because of racism, verbal abuse, and he believed Linn and Wangler would physically abuse him and/or fabricate a ticket on him. Frank told him this could have been avoided if he would have just given Linn what he wanted and that he should not have written the letter to the Governor and the others. Plaintiff told Frank he had no information to give Linn and he wrote the letter because he needs help and no one at Pinckneyville cares. He also told Linn that the Intel Unit/Internal Affairs runs a racist and illegal operation. Frank told Plaintiff he would release him from segregation because he felt he was not a threat to staff but advised him to stop writing grievances and letters to the Governor because Wardens Love and Thompson did not like it. Frank also stated that an IDOC investigator would interview him because the letter he wrote had reached the Governor and high ranking IDOC officials. Plaintiff informed Frank that he did not feel safe at Pinckneyville and would continue to write letters to shine a light on the staff's racist and illegal activity. Frank responded that if he did that, he would be held accountable.

Later that day, State Investigator Billy Stanhouse interviewed Plaintiff in Frank's office. Plaintiff told him to interview any inmate at Pinckneyville about the staff's racist and illegal conduct. He told them about his complaints with Wangler, the Intel Unit/Internal Affairs, and other staff. He gave Stanhouse names of witnesses that could attest to his complaints and that there was videotape recordings that would show Wangler's actions. He also told Stanhouse that he did not feel safe at Pinckneyville because of the staff's racist and illegal activity occurring on a

4

daily basis. Stanhouse said he would investigate the complaints but that Plaintiff should not have written the Governor. Stanhouse told Plaintiff if he had any other complaints to write his boss, Mark Delia, Chief of IDOC Intel Units. Stanhouse stated that he embarrassed IDOC by writing the Governor and that was not good for him. Stanhouse then conducted a bogus investigation. He only interviewed Intel Unit/Internal Affairs and staff. He did not interview Plaintiff's witnesses or view the videotape. Stanhouse fabricated conclusions in favor of IDOC staff.

Plaintiff was removed from segregation under investigation on August 29, 2019 and was taken to disciplinary segregation again on September 3, 2010. He received a disciplinary report on September 5, 2019 written by Investigator Rodman of the Intel Unit accusing him of gang leadership activity and assault. The disciplinary report stated that Inmate Champs told Inmate Alexander-Smith to assault Inmate Willis because Inmate Willis was involved in homosexual activity which is forbidden by gang rules. It further stated that Plaintiff has a leadership role in the gang and if Champs told Alexander-Smith to assault Willis, Plaintiff had to agree. The report was written on the word of a confidential source. The report states Rodman initiated the inquiry on September 2, 2019 after receiving information that Champs gave the order for the assault at evening chow. The inquiry lasted less than 24 hours.

Before the disciplinary hearing, Plaintiff sent the Adjustment Committee a list of witnesses he wanted to call on his behalf and sent 25 questions to be asked of Rodman and his confidential sources. He went before the Adjustment Committee which included members Lt. Heck and Diane Skorch on September 10, 2019. Heck told him they had received his witness list and questions. Plaintiff told the committee he was not involved in gang activity, that this was retaliation by the Intel Unit, that the confidential source (if he exists) is a liar, and that Alexander-Smith does not work evening chow – he works as a cook and does not see inmates when they come through the

chow hall. He pointed out that there are no dates, times, or locations of his alleged involvement. Plaintiff gave the committee grievances and letters about his complaints against the Intel Unit to show their bias against him. Heck told Plaintiff he would investigate his defense but it did not look good for him because he had embarrassed the Wardens with the letters he and his attorney had written to the Governor and others. Wardens Love and Thompson had talked to the Intel Unit and Heck about their disdain for Plaintiff.

Plaintiff received his final summary report from the Committee on September 19, 2019. He was found guilty on all charges and was given 6 months in disciplinary segregation, 6 months revocation of good time, 6 months of visitation restriction, disciplinary transfer, and other restrictions. The report shows he was found guilty on the date of the hearing, which belies Heck's statement that he would investigate Plaintiff's defense. The report states Plaintiff requested no witnesses and gave no relevant information. Contrary to the report, his witnesses included: 1) Frank to prove the Intel Unit's bias; 2) Alexander-Smith to prove he had not spoken with him in over a year, they never communicated about gang activity, that he does not work dietary in the evening, and Champs never told him to assault Willis; and 3) Champs to prove they have never met and have never communicated about gang activity. The basis for decision section repeats verbatim Rodman's disciplinary report. The report does not state why the confidential source was deemed reliable.

While Plaintiff was in disciplinary segregation and his property was held by the Intel Unit, several items were stolen, including his blood pressure medication, walkman, dictionary, law dictionary, and address book with his family's and friend's personal information. This was done by the Intel Unit to harass him and harm him by "messing with his health."

On September 25, 2019, after Wardens Love and Thompson signed off on the Committee's

decision and the recommended disciplinary transfer, Plaintiff was transferred to Menard, a maximum-security facility. Wardens Love and Thompson sent him to Menard even though his life would be in danger there. IDOC has documentation of the threats, harassment, and verbal and physical abuse Plaintiff previously endured at the hands of Menard staff, including a staff member brandishing a gun at him. Wardens Love and Thompson were aware of his past issues at Menard and chose to send him there for retaliatory reasons.

At Menard, Plaintiff was put in segregation in a cell without sheets, soap, toothpaste, cleaning supplies, a change of underwear, or a fan, even though there were 90-degree days. He endured these conditions for two weeks until he was given his personal property from Pinckneyville. Under Warden Lawrence's pink phase policy, Plaintiff was not allowed to shower for seven days or yard for thirty days. For six months, he had no access to the phone, contact visits, college courses, school, programs, day room, commissary (except hygiene items), or law library (except through the mail). After the initial thirty days, he was in a tiny cell twenty-four hours a day with yard only twice a week. He received only a cup of cleaning liquid to clean his cell once a week. Because Plaintiff was placed in disciplinary segregation and written a false disciplinary ticket in retaliation for writing grievances and letters complaining about his treatment at Pinckneyville, it took such a toll on him that he talked to a mental health professional for the first time since being in IDOC for 18 years.

Based on the allegations in the Complaint, the Court finds it convenient to designate the following claims in this *pro se* action:

Count 1: First Amendment claim retaliation claim against Linn.

Count 2: First Amendment claim against Wangler for taking Plaintiff's property in retaliation for Plaintiff failing to provide any gang information to Linn.

7

| | |
|---|---|
| Count 3: | First Amendment claim against Wangler for harassing Plaintiff in retaliation for Plaintiff filing grievances and writing letters to government and IDOC officials. |
| Count 4: | First Amendment claim against Frank for placing Plaintiff in segregation under investigation in retaliation for Plaintiff filing grievances and writing letters to government and IDOC officials. |
| Count 5: | First Amendment claim against Stanhouse for failing to investigate Plaintiff's complaints in retaliation for Plaintiff filing grievances and writing letters to government and IDOC officials. |
| Count 6: | First Amendment claim against Rodman for filing a false disciplinary charge and against Heck and Skorch for finding Plaintiff guilty of the charge in retaliation for Plaintiff filing grievances and writing letters to government and IDOC officials. |
| Count 7: | First Amendment claim against Love and Thompson for a retaliatory transfer to Menard. |
| Count 8: | Fourteenth Amendment due process claim against Frank and Stanhouse for failure to investigate Plaintiff's complaints against Wangler. |
| Count 9: | Fourteenth Amendment due process claim against Rodman for a false disciplinary ticket and Heck, Skorch, Love, and Thompson related to disciplinary proceedings in which Plaintiff's witnesses were not called, he was denied an impartial adjustment committee, his exculpatory evidence was ignored, and the evidence was not sufficient to support the guilty finding. |
| Count 10: | Eighth Amendment claim against Wangler for harassing and threatening Plaintiff. |
| Count 11: | Eighth Amendment conditions of confinement claim against Lawrence for his pink phase policy that denied Plaintiff showers and yard time. |
| Count 12: | Fourteenth Amendment deprivation of property claim for Plaintiff's property that was stolen in the Intel Unit. |
| Count 13: | State law indemnification claim under 5 ILCS 350/2 |

Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading

8

standard.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

## Discussion

### Counts 1-7

Prison officials may not retaliate against inmates for filing grievances, exercising First Amendment rights, or otherwise complaining about their conditions of confinement. *See, e.g., Gomez v. Randle,* 680 F.3d 859, 866 (7th Cir. 2012).  To state a retaliation claim, a plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014).  "A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'"  *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (internal citation omitted).  At this stage, Plaintiff states plausible retaliation claims in Counts 3-7 against Wangler, Franks, Stanhouse, Rodman, Heck, Skorch, Love, and Thompson for taking retaliatory actions in response to Plaintiff filing of grievances.

Additionally, the allegations that Plaintiff's property was taken in retaliation for him failing to provide gang information to Linn are sufficient to proceed on the retaliation claim in Count 2 against Wangler.  "An offender's truthful responses to an internal affairs investigation are consistent with legitimate penological objectives and constitute protected conduct, even if prison staff is unhappy with the content of the responses." *Austin v. Spiller*, No. 18-CV-1152-DRH, 2018 WL 4362557, at *5 (S.D. Ill. Sept. 13, 2018) (citing *McKinley v. Schoenbeck*, 731 F. App'x 511, 514 (7th Cir. 2018)).

9

Plaintiff's allegations are not sufficient, however, to state a retaliation claim against Linn. The allegations that Linn told him he would regret not providing any information and that Linn offered other inmates incentives to provide information about Plaintiff, do not constitute a deprivation to support a retaliation claim. As such, Count 1 against Linn will be dismissed.

## Count 8

With respect to the alleged failure to investigate Plaintiff's complaints, "a state's inmate grievance procedures do not give rise to a liberty interest protected by the due process clause." *Antonelli v. Sheahan,* 81 F.3d 1422, 1430 (7th Cir. 1995). In fact, the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich,* 681 F.2d 1091 (7th Cir. 1982). Prison officials thus incur no liability under § 1983 if they fail or refuse to investigate a prisoner's complaints or grievances. *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005). Nor does the Constitution require officials to investigate or otherwise correct wrongdoing after it has happened. *Whitlock v. Brueggemann*, 682 F.3d 567, 588-89 (7th Cir. 2012); *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002). Because inmates do not have a due process right to have their claims investigated at all, Plaintiff fails to state a claim and Count 8 will be dismissed. *See Watson v. Dodd*, No. 16-CV-1217-NJR, 2017 WL 120951, at *6 (S.D. Ill. Jan. 12, 2017); *Wilkins v. Illinois Dep't of Corr.* No. 8-cv-732-JPG, 2009 WL 1904414, at *9 (S.D. Ill. July 1, 2009).

## Count 9

To state a procedural due process claim under the Fourteenth Amendment, Plaintiff must sufficiently allege that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). A disciplinary ticket, even if falsely issued, does not violate the Fourteenth Amendment if the

10

inmate receives procedural due process in the disposition of the ticket. *Hanrahan v. Lane*, 747 F.2d 1137, 1140 (7th Cir. 1984). A court analyzing a due process claim in the context of prison disciplinary hearings must consider: (1) whether there was a protected interest at stake that necessitated due process protections; and (2) whether the disciplinary hearing was conducted in accordance with procedural due process requirements. *Zinermon*, 494 U.S. at 125.

Plaintiff alleges he received 6 months in disciplinary segregation, 6 months revocation of good time, 6 months of visitation restriction, and disciplinary transfer. Only the disciplinary segregation potentially implicates a liberty interest.[1] That said, the Seventh Circuit has held that six months of segregation is "not such an extreme term" and, standing alone, would not trigger due process rights. *Marion v. Columbia Correction Inst.*, 559 F.3d 693, 698 (7th Cir. 2009) (internal citations omitted). However, a liberty interest may be implicated based on that duration if the conditions of the Plaintiff's confinement "were significantly altered when he was placed in segregation." *Id.* Plaintiff's allegation that he was subjected to harsh conditions may implicate a liberty interest.

In a prison disciplinary proceeding, procedural due process requires compliance with the protections outlined in *Wolff v. McDonnell*, 418 U.S. 539 (1974). Specifically, an inmate is entitled to (1) advanced written notice of the charge against him; (2) the right to appear before an impartial hearing panel; (3) the right to call witnesses and present documentary evidence if prison safety allows; and (4) a written statement of the reasons for the discipline imposed. *Wolff*, 418 U.S. at

---

[1] There is no protected liberty interest in loss of visitation privileges. *Thomas v. Ramos*, 130 F.3d 754, 762 n.8 (7th Cir. 1997) (and cases cited therein) (no protected liberty interest in demotion to C-grade status and loss of commissary privileges). While loss of good time credits implicates a liberty interest, claims that imply that an inmate's good time credits should be restored cannot be pursued in a Section 1983 action until the good time is restored through other means. *Heck v. Humphrey,* 512 U.S. 477, 480-81 (1994); *McAtee v. Cowan,* 250 F.3d 506, 508 (7th Cir. 2001)*; see also Edwards v. Balisok*, 520 U.S. 641 (1997) (Section 1983 claim for damages is barred if it would imply the invalidity of a disciplinary decision revoking good-conduct credit, unless disciplinary action has been reversed). Plaintiff has not alleged that the good time credit has been restored.

11

563-69.  In addition, the disciplinary decision must be supported by some evidence.  *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994).  Plaintiff alleges the Committee refused to consider his witnesses and exculpatory evidence, the panel was biased, and the evidence did not support a guilty finding.

Plaintiff has stated a viable claim against Rodman based on the alleged false disciplinary ticket and Heck and Skorch for the alleged due process violations in the disciplinary proceedings. However, to the extent he seeks to hold Love and Thompson accountable for due process violations in the disciplinary proceedings, the facts alleged do not support liability.  He does not allege that Love and Thompson were involved in the disciplinary hearing or the Committee's findings. Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation."  *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (internal quotations and citations omitted).  Signing off on a disciplinary report or final summary report does not rise to the level of personal involvement necessary for liability to attach. For these reasons, the claim in Count 9 against Love and Thompson will be dismissed without prejudice.

**Count 10**

Allegations of verbal abuse and threats are generally insufficient grounds for relief under § 1983.  *See Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015) ("[M]ost verbal harassment by jail or prison guards does not rise to the level of cruel and unusual punishment."); *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000). However, verbal harassment that causes physical or psychological pain may amount to cruel punishment under the Eighth Amendment. *Beal*, 803 F.3d at 357-58.  Although Plaintiff alleges that he spoke with a mental health professional and felt "mentally defeated" after his disciplinary transfer to Menard, he does not describe psychological

pain or the type of verbal harassment sufficient to constitute cruel punishment. Therefore, Count 10 will be dismissed without prejudice.

### Count 11

Under the Eighth Amendment, prisoners are entitled to "the minimal civilized measure of life's necessities. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). At the screening stage, Plaintiff alleges a viable Eighth Amendment conditions of confinement claim against Lawrence.

### Count 12

Plaintiff does not associate the claim that his property was stolen while in the possession of the Intel Unit with a specific defendant and, the claim fails for that reason. Additionally, an IDOC inmate has an adequate post-deprivation remedy for damages in the Illinois Court of Claims for confiscation of his non-contraband property by IDOC personnel. *See Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999) (citing 705 ILCS 505/8); *Stewart v. McGinnis*, 5 F.3d 1031, 1035–36 (7th Cir. 1993). Therefore, Count 12 will be dismissed.

### Count 13

Under the State Employee Indemnification Act, 5 ILCS 350/1, et seq., the State is obligated to indemnify "any State employee" in civil actions against the employee for "act[s] or omission[s] occurring within the scope of the employee's State employment" and the Attorney General is to appear on the employee's behalf. 5 ILCS 350/2(a) and (e)(ii). The Illinois State Employee Indemnification Act does not expressly create a private cause of action, and there are no allegations that Plaintiff meets the criteria for an implied cause of action. *See* 5 ILCS 350/2; *see also Emerald Pork, II, Ltd. v. Purina Mills, Inc.,* 17 F.Supp.2d 816, 817 (C.D. Ill. Sept. 23, 1998) ("A private cause of action will be implied in Illinois only if: (1) plaintiff is a member of the class for whose benefit the Act was enacted; (2) it is consistent with the underlying purpose of the Act; (3)

plaintiff's injury is one the Act was designed to prevent; and (4) it is necessary to provide an adequate remedy for violations of the Act.").

Further, Plaintiff makes this claim against the State of Illinois, who is not a Defendant in this case, and the Eleventh Amendment bars federal courts from exercising jurisdiction over "actions against a state brought by her own citizens," unless the state consents to suit. *Scott v. O'Grady*, 975 F.2d 366, 369 (7th Cir. 1992) (citations omitted). The fact that a state chooses to indemnify its employees for damages does not constitute consent. *Ollison v. Wexford Health Sources, Inc.*, No. 16-C-00662, 2016 WL 6962841, *8 (N.D. Ill. Nov. 26, 2016) (citation omitted). Accordingly, Count 13 will be dismissed as it is premised on a "mere legal conclusion" that "does not ... purport to make a substantive claim," and a federal court cannot enter a money judgment requiring the State of Illinois to indemnify its employees. *Id.*

## Disposition

The following claims will proceed: Count 2 against Wangler; Count 3 against Wangler; Count 4 against Mac-Shane Frank; Count 5 against Billy Stanhouse; Count 6 against C/O Rodman, Heck, and Diane Skorch; Count 7 against Warden Love and Scott Thompson; Count 9 against Rodman, Heck and Skorch; Count 11 against Frank Lawrence. Counts 1, 8, 10, 12 and 13 and Bart Linn are **DISMISSED** without prejudice and the Clerk of Court is **DIRECTED** to **TERMINATE** Linn as a defendant. Count 9 is **DISMISSED** without prejudice as to Love and Thompson.

The Clerk shall prepare for Wangler, Mac-Shane Frank, Billy Stanhouse, C/O Rodman, Heck, Diane Skorch, Warden Love, Scott Thompson, and Warden Lawrence: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this

Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to file an appropriate responsive pleading to the Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants only need respond to the issues stated in this Merit Review Order.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of

prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  December 14, 2020**

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**United States District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answer, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.