IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| BRIAN JONES,<br>#K56957, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:19-cv-01307-SMY-MAB |
| | ) | |
| MAC-SHANE FRANK, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM & ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on a motion to compel discovery, a motion to take audio depositions, and a motion to expand discovery filed by Plaintiff Brian Jones. (Doc. 135, 146, 153). The motions have been referred to the undersigned by United States District Judge Staci M. Yandle. (Doc. 137, 158, 161). For the following reasons, the motion to compel is granted in part and denied in part, the motion to take audio depositions is denied, and the motion to expand discovery is denied.

## BACKGROUND

Plaintiff Brian Jones filed this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while he was at Pinckneyville Correctional Center ("Pinckneyville") and Menard Correctional Center ("Menard"). Plaintiff alleges that Defendant Wangler retaliated against him by taking his property when he failed to provide any information relating to gang activity during an Internal

Affairs' investigation. Plaintiff then suffered further retaliation by other members of staff after he filed grievances and wrote letters to state officials about Wangler's conduct towards him and ongoing racist and illegal activity at Pinckneyville. He was issued a false disciplinary ticket and wrongfully found guilty of gang leadership activity and assault. As part of his discipline, Plaintiff was sentenced to six months in segregation and transferred to Menard, a maximum-security facility, where he was placed in a cell without sheets, cleaning supplies, clean clothes, or hygiene items. Plaintiff was kept in his cell for 24 hours a day and allowed yard only twice a week.

Following screening of the Complaint under 28 U.S.C. § 1915A, Plaintiff is proceeding on the following claims (Doc. 20):

| Count 2: | First Amendment claim against Wangler for taking Plaintiff's property in retaliation for Plaintiff failing to provide any gang information to Linn. |
| --- | --- |
| Count 3: | First Amendment claim against Wangler for harassing Plaintiff in retaliation for Plaintiff filing grievances and writing letters to government and IDOC officials. |
| Count 4: | First Amendment claim against Frank for placing Plaintiff in segregation under investigation in retaliation for Plaintiff filing grievances and writing letters to government and IDOC officials. |
| Count 5: | First Amendment claim against Stanhouse for failing to investigate Plaintiff's complaints in retaliation for Plaintiff filing grievances and writing letters to government and IDOC officials. |
| Count 6: | First Amendment claim against Rodman for filing a false disciplinary charge and against Heck and Skorch for finding Plaintiff guilty of the charge in retaliation for Plaintiff filing grievances and writing letters to government and IDOC officials. |

Count 7:      First Amendment claim against Love and Thompson for a retaliatory transfer to Menard

Count 9:      Fourteenth Amendment due process claim against Rodman for a false disciplinary ticket and Heck and Skorch related to disciplinary proceedings in which Plaintiff's witnesses were not called, he was denied an impartial adjustment committee, his exculpatory evidence was ignored, and the evidence was not sufficient to support the guilty finding.

Count 11:     Eighth Amendment conditions of confinement claim against Lawrence for his pink phase policy that denied Plaintiff showers and yard time.

This case is now in discovery on the merits of Plaintiff's claims. On June 28, 2022, Plaintiff filed a motion asking the Court to compel Defendants to produce documents in response to twenty production requests and answer six interrogatories. (Doc. 116). The motion was denied because Plaintiff had not demonstrated a good faith effort to resolve the discovery disputes directly with Defendants prior to involving the Court. However, due to Plaintiff's incarcerated status and the ongoing discovery issues in this case, Defense counsel was directed to make the necessary arrangements for the parties to meet and confer to discuss the discovery issues. (Doc. 131).

Plaintiff then filed the current motion to compel on October 4, 2022. (Doc. 135). He states that he spoke with Defense Counsel twice over the phone about discovery disputes and received supplemental responses to his discovery requests on September 28, 2022. Plaintiff, however, takes issue with the redaction of information from the responsive documents and suspects that Defendants are withholding documents. He asks that (1) all documents be turned over unredacted; (2) any other documents and emails that the

Department of Technology and Innovation have uncovered pertaining to his request be turned over to the Court and for the Court to determine if the documents are relevant to his claims; and (3) all other documents that he has requested be turned over. (Doc. 135, p. 4). Plaintiff also states that he should be allowed to know the identity of the confidential informants.

After Plaintiff filed his motion, the Court instructed Defendants to submit to the Court's proposed document inbox a copy of the privilege log as well as the unredacted documents, so that the Court could determine whether it is feasible to conduct an *in camera* review of the disputed discovery. (Doc. 138). Defendants provided the Court with the requested documents.

On October 21, 2022, Plaintiff filed a motion seeking to take audio depositions via a recording device. (Doc. 146). Discovery closed on November 17, 2022. Then on November 28, 2022, the Court received from Plaintiff a motion asking to serve additional interrogatories and production requests. (Doc. 153).

## MOTION TO COMPEL

First, the Court will address the blanket requests that (1) all documents be turned over unredacted; (2) any other documents and emails that the Illinois Department of Technology and Innovation have uncovered pertaining to his request be turned over to the Court and for the Court to determine if the documents are relevant to his claims; and (3) all other documents that he has requested be turned over.

In the Scheduling Order, the parties were instructed that they must submit the discovery requests and responses at issue along with any motion to compel. (Doc. 51, p. 2). *See also* SDIL-LR 26.1(b)(3). When a party does not adequately specify the exact discovery requests it is seeking to compel and fails to provide a copy of the discovery requested and the corresponding response, the Court cannot make any kind of determination regarding relevancy and the sufficiency of Defendants' answer to each discovery request. *See Jordan v. United States,* No. 18-cv-1100-NJR, 2022 WL 16949091, at *5 (Nov. 15, 2022) (denying the plaintiff's request for the court to review unredacted copies of every piece of redacted discovery). Thus, the request for the Court to compel Defendants to produce all documents without redaction is denied.

The Court will also not order the Illinois Department of Technology and Innovation to turn over to the Court every document it "uncovers" for a relevancy determination. The "Court does not conduct *in camera* document reviews to determine *relevancy* for purposes of discovery." *RBS Citizens, N.A. v. Husain,* 291 F. R. D. 209, (N.D. Ill. June 4, 2013) (internal citations and quotations omitted) (emphasis added). Plaintiff appears to be making this request because he believes that Defendants are withholding documents responsive to his discovery requests and states their "credibility is dubious at best." (Doc. 135, p. 13). While Defendants have objected to certain requests and redacted information from discovery produced, there is no evidence that they have responded to discovery in bad faith, intentionally omitted a document from the privilege log, or attempted to hide the existence of responsive documents. As unsupported speculation is

insufficient to support a motion to compel, the request is denied. *See Martin v. Fort Wayne Police Dept.*, 2012 WL 5878874, at *1 (N.D. Ind. Nov. 21, 2012) (citations omitted).

## I. Redacted Documents

As discussed above, the Court will not unilaterally order all documents to be produced without redactions. Plaintiff has provided several documents as exhibits that have been redacted, and the Court will address the request to provide unredacted copies as to these specific documents only. The Court has conducted an *in camera* inspection of Plaintiff's exhibits in an unredacted form and finds that the redactions of the following documents are proper, as the material redacted pertains to the investigation of gang activity that is not relevant to Plaintiff's claims in this case and could compromise the safety of inmates and staff if disclosed. *See Abbott v. Lockheed Martin Corp.*, No. 06–cv–0701, 2009 WL 511866, at *3 (S.D. Ill. Feb. 27, 2009) (permitting the redaction of information that was not relevant to the issues in the case).

> *Daily Cell Change List* **(Doc. 135, p. 23; Bates Stamp 843) -** Defendants redacted the identifying information of other inmates from the Daily Cell Change list for April 30, 2019.

> *Email April 30, 2019* **(Doc. 135, p. 25, 75; Bates Stamp 712; 715) -** Defendants redacted information regarding the identities of security threat group leaders, with the exclusion of Plaintiff.

> *Emails September 2 and 3, 2019* **(Doc. 135, p. 27-28; Bates Stamp 836-837) -** These emails discuss two disciplinary reports that were to be issued by Defendant Rodman. Defendants redact information pertaining to the disciplinary report issued to another inmate and that does not involve Plaintiff.

> *IDOC Central Intelligence Unit Intelligence Report* **(Doc. 135, p. 29-30; Bates Stamp 688-89) -** Defendants redact information pertaining to an investigation that does not involve Plaintiff.

**Email September 4, 2019 (Doc. 135, p. 31, 61-62; Bates Stamp 695-697) -** This email pertains to the investigation and disciplinary reports of several inmates and redacts information not pertaining to Plaintiff.

**Email September 3, 2019 (Doc. 135, p. 32, 57-60; Bates Stamp 690-694)[1] -** This email pertains to investigations into security threat group activity and in addition to discussing Plaintiff, also discusses individuals and incidences not involving him. Such information is redacted.

**Email September 6, 2019 (Doc. 135, p. 38-40; Bates Stamp 839-841) -** This email pertains to organizing inmates for transfer to another facility within IDOC. Defendants redact names of inmates, with the exclusion of Plaintiff.

**Email June 14, 2019 (Doc. 135, p. 49-53; Bates Stamp 680-684) -** This email is heavily redacted because the senders are discussing the investigation of another inmate also involved in a security threat group. Plaintiff's name is included at the end of the email chain noting that he is also a member of the same security threat group.

Although the Court finds most of the exhibits properly redacted, Defendants have overly redacted the email dated August 30, 2019, and forwarded September 1 and 4, 2019 (Doc. 135, p. 54-55; Bates Stamp 685-686). This email was originally sent by Defendant Rodman and discusses the investigational interview with a confidential informant regarding Plaintiff. As discussed further below, Rodman solely relied on the information obtained from interviewing confidential informants as evidence for the disciplinary ticket dated September 3, 2019. Thus, this email does contain information relevant to Plaintiff's claims. Defendants are directed to provide Plaintiff with a new copy of the email chain originally sent August 30, 2019 (Bates Stamp 685-686), redacting only identifying information of the confidential informant, this could include name, pronouns, and

---

[1] Plaintiff's exhibits include additional emails forwarding the same information. (*See* Doc. 135, p. 33-34, 63-73; Bates Stamp 698-710).

phrases.

## II. Production Requests and Interrogatories

Plaintiff also seeks to compel Defendants to respond to certain requests for document production and interrogatories. The Court will address each dispute in turn.

*Document Request #4*

> Plaintiff seeks all documents relating to or concerning the confidential informant and/or sources' statements given to Defendant Rodman pertaining to the disciplinary report Rodman wrote on Plaintiff September 3, 2019. (Doc. 135, p. 93; Exhibit N).

Defendants object to his request based on safety and security concerns.

Plaintiff argues that the credibility of these confidential informants is important since no other evidence, other than their statements, was relied upon by Defendant Rodman in writing the disciplinary report. (Doc. 135, p. 14; Doc. 154, p. 2). Plaintiff wishes to question the confidential informants about the statements and whether the statements were freely given or if the informants were told what to say. (*Id.* at p. 15). Defendants respond that disclosing the identities of these confidential sources would constitute a significant risk to their safety. (Doc. 150, p. 3).

"A number of courts, including the Supreme Court, have recognized the obvious danger of disclosing the identities of confidential informants." *Ajala v. Swiekatowski,* No. 13-cv-638-bbc, 2015 WL 542220, at *1 (W.D. Wisc. Dec. 31, 2014) (citations omitted). *See also Harris v. Ashby,* No. 11-cv-3074, 2013 WL 4675843, at *1 (C.D. Ill. Aug. 30, 2013) (allowing the disclosure of the substance of the statements made by the confidential informants but denying the request to disclose their identities). In addition to concerns

regarding physical safety of informants and prison security, revealing the identities of informants could "discourage prisoners from coming forward about safety threats in the future." *Ajala,* 2015 WL 542220, at *2 (citations omitted). *See Johnson v. Dye,* 2021 WL 4456552, at *4 (S.D. Ill. Sept. 29, 2021) (noting that identifying confidential informants could "chill further communication" between prisoners and prison staff). Balancing the competing interests at play, the Court does not find, at this time, that the need for the identities of the confidential informants outweighs the security risks. In his reply, Plaintiff does not refute or address the safety and security concerns raised by Defendants. He only states that "credibility is an issue for Defendants and the so called confidential sources." (Doc. 154, p. 1-2). He also does not explain how he plans on gathering further discovery or information from the confidential informants, once identified. Thus, the Court will not compel Defendants to disclose the identities of the confidential informants at this time.

Because Defendant Rodman relied solely on the statements from confidential informants in issuing Plaintiff's disciplinary ticket dated September 3, 2019, Defendants are directed to produce the investigational interviews. Defendants may redact any identifying information or language prior to disclosure.

***Document Requests #20 and #21:***

> Plaintiff seeks all documents and communications regarding a grievance that he wrote against C/O Reubke on 4-3-17, including all documents concerning the investigation performed by Defendant Frank. (Doc. 135, p. 44-45; Exhibit K).

> Defendants object to both requests as vague and contend that they are not likely to lead to the discovery of admissible evidence. Correctional Officer Reubke is not a party to this action. Further, Count 8 for alleged failure to investigate was dismissed.

In his motion to compel, Plaintiff argues that these documents are relevant because he plans to use them to show that Defendants Frank and Stanhouse are not credible. He asserts that after he wrote the grievance regarding Correctional Officer Reubke's conduct, Frank never interviewed him, and Stanhouse recorded that Plaintiff "made it all up." (Doc. 135, p. 18).

The Court finds that these documents describing the alleged misconduct of a non-party in 2017 and subsequent investigation are not relevant to the claims in this case, which occurred in 2019. Neither are they relevant concerning the credibility of Defendants. At most, they show that Plaintiff disagrees with the manner in which Frank conducted the investigation into Reubke's conduct and that he believes Stanhouse put false statements in the investigatory report. Additionally, he cannot use evidence of other wrongs solely to show "a person's propensity to behave a certain way." *United States v. Gomez,* 763 F. 3d 745, 855 (7th Cir. 2014) (citing FED. R. EVID. 404(b)(1)). Thus, the requests to compel a response to documents requests #20 and #21 are denied.

### Document Request #27

> Plaintiff requests documents that relate to all prisoners who worked in the kitchen during the evening shift (3:00 p.m. – 7:00 p.m.) on 9-2-19, including sign-in sheets. (Doc. 135, p. 94; Exhibit O).

Defendants originally objected to this request based on safety and security concerns. In their response in opposition, however, they state that they have supplemented this disclosure and have provided the sheets recording inmates signing in and out of their cell house to go elsewhere in the facility leaving those who report to the

kitchen unredacted. (Bates stamp 000953-000964). The Court finds this responsive to Plaintiff's request, and the request to compel is denied as moot.

### Interrogatory #4 to Defendant Thompson

Plaintiff asks Defendant Thompson for the identification of all individuals who had access, viewed, edited, or had knowledge of the video footage talked about in Plaintiff's motion to compel, see Doc. 78 and Doc. 83. (Doc. 135, p. 95; Exhibit P).

Defendant Thompsons refers Plaintiff to Defendant's separately tendered objections. He also states that subject to and without waiver of said objections, he is not personally aware of who had access, viewed, edited or had knowledge of the video footage, but states that certain supervisory-level personnel may have had access.

Plaintiff argues that he needs the names of the supervisory-level personnel who may have had access to the video. (Doc. 135, p. 19). In response, Defendant Thompson states again that he is not personally aware of the information sought. He further states that Defendants Frank and Stanhouse adequately indicated who had access to the footage. (Doc. 150, p. 4).

"If a good faith response to an interrogatory is that the respondent does not know the information asked, and cannot make reasonable efforts to learn the information, then such a response is not objectionable." *Vukadinovich v. Hanover Cmty. Sch. Corp.*, No. 13-cv-144, 2014 WL 667830, at *5 (N.D. Ind. 2014). Furthermore, "under the Federal Rules, it is not sufficient for a party to blankly state it cannot answer an interrogatory…If a party genuinely does not know an answer, it must indicate that the information is unavailable. If only some information is available, that information must be provided, but a prefatory statement may be used to place the answer in context." *Bell v. Woodward Governor Co.*, No.

03-c-50190, 2005 WL 289963, at *5 (N.D. Ill. 2005). Although Defendant Thompson states he is not personally aware of the information asked, he has failed to explain why, as warden, he is not able to obtain with reasonable effort the names the supervisory officials to which he referred in his original answer.

Therefore, the Court orders Thompson to provide Plaintiff with the names of the supervisory-level personnel who may have had access the video. If Thompson cannot obtain this information, his must explain why, providing a detailed explanation of his efforts to obtain the information and the reason his efforts were not successful.

### *Interrogatories #21, #22, and #23 to Defendant Frank*

> Plaintiff asks Defendant Frank to identify all correctional officers that worked on R2 on 4-30-19 & 5-1-19 on the 7:00 a.m. – 3:00 p.m. shift or that were in R2 on 4-30-19 & 5-1-19 during 7:00 a.m. – 3:00 p.m., the identity of all correctional officers that worked R4 on April 30, 2019, on the 7:00 a.m. – 3:00 p.m. shift, and the identity of the prisoner who worked as the foyer porter on 4-30-19 in R4 on the &:00 a.m. – 3:00 p.m. shift. (Doc. 135, p. 96-97; Exhibit Q).

> Defendant Frank refers Plaintiff to Defendants' separately tendered objections. Frank further states subject to and without waiver of said objections, he is not personally aware of what correctional officers work or were in R2 or R4 on April 30, 2019, and May 1, 2019, between 7:00 am to 3:00 p.m. or what prisoner worked as the foyer porter in R4 on April 30, 2019, between 7:00 a.m. to 3: p.m.

Plaintiff argues that he needs this information because these individuals were witnesses to his claims against Defendant Wangler, and he would like to depose them. (Doc. 135, p. 19).

This request is denied. Plaintiff may want the names of individuals he believes witnessed the conduct alleged, but he has not presented any argument, evidence, or case

law that suggests the Court should disregard Defendant Frank's answer that he does not have knowledge of the names Plaintiff is requesting. Frank worked in Internal Affairs, it is not clear how he would know who was present in R2 and R4 on April 30 and May 1, 2019. Thus, the requests to compel further answers to Interrogatories #21, #22, and #23 are denied.

*Outstanding Discovery*

In his reply brief, Plaintiff states that after reviewing the privilege log, he has not received discovery with Bate Stamp numbers starting with 3 and 4. (Doc. 154). To the extent these documents have already been produced, Defendants are directed to provide notice to the Court detailing the date the documents were sent to Plaintiff. If the documents have not been sent, then Defendants shall mail the documents to Plaintiff and file a certificate of compliance.

## Motion to Take Audio Depositions

Plaintiff asks the Court to allow him to depose Defendants and five witnesses using an audio recording device. (Doc. 146). He states that he has the money to purchase and ship the recording device to Western Illinois Correctional Center ("Western"), where he is currently incarcerated. Plaintiff proposes that the litigation coordinator at Western maintain possession of the device and that he would conduct the depositions over the telephone. He states that each deposition would take no longer than an hour.

The Court does not grant leave for Plaintiff to take the requested depositions. *See* FED. R. CIV. P. 30(a)(2). Although Plaintiff states he can pay and arrange for the provision

of an audio recording device, this is not sufficient, as there are other costs associated with depositions that he has not addressed. Such other costs would include deposition officer fees, witness fees, and the cost of the deposition transcript.[2] Although Plaintiff is proceeding *in forma pauperis*, the Court does not have the authority to fund and organize the discovery Plaintiff may wish to conduct. *See McNeil v. Lowery*, 831 F.2d 1368, 1372 (7th Cir. 1987) ("A litigant's constitutional right of access to the courts does not include a waiver of witness fees so that an indigent plaintiff can present his case fully to the court."). *See also Whaley v. Erickson*, No. 05-C-898, 2006 WL 3692633 at *3 (E.D. Wisc. Dec. 11, 2006) ("Arranging for an officer to meet with the defendants and conduct numerous depositions would involve considerable expense and time."); *Clark v. Schaller*, No. 06-C-242, 2006 WL 2882963, at *1 (E.D. Wisc. Oct. 10, 2006) (ruling that plaintiff's IFP status "does not entitle him to the government's assistance when he seeks to take depositions"). For these reasons, the motion is denied.

## Motion to Expand Discovery

Plaintiff seeks leave to serve additional interrogatories and document requests on Defendants. (Doc. 153). Because Plaintiff has filed his motion after the close of discovery in this case, he must show excusable neglect for failing to seek an extension of the discovery deadline after the deadline has passed and good cause for extending the deadline. FED. R. CIV. P. 6(b)(1)(B). *See* Murphy *v. Eddie Murphy Prods., Inc.*, 611 F.3d 322, 324 (7th Cir. 2010) (discussing FED. R. CIV. P. 6(b)(1)).

---

[2] A written transcript of the deposition responses is required if Plaintiff plans on using the deposition testimony to oppose summary judgment or for impeachment purposes at trial.

Plaintiff has shown good cause for filing his motion after the discovery deadline of November 17, 2022. He states that he did not receive Defendants' objections to his discovery requests based on Plaintiff exceeding the number of allotted interrogatories and production requests until November 21, 2022. However, the Court does not find good cause to extend the discovery deadline. Plaintiff has failed to provide any information for the Court to conclude that additional discovery is necessary at this late stage in the case. Accordingly, the motion is denied.

## DISPOSITION

For the reasons stated above, the Motion to Compel Discovery filed by Plaintiff is **GRANTED in part and DENIED in part.** (Doc. 135). By **February 8, 2023,** Defendants are **DIRECTED** to produce to Plaintiff the following:

- A new copy of the email chain originally sent August 30, 2019 (Bates Stamp 685-686), redacting only identifying information or language of the confidential informant.

- Investigational interviews relied upon by Defendant Rodman in writing the September 3 disciplinary report with any identifying information or language redacted.

Also, by **February 8, 2023,** Defendant Thompson is **DIRECTED** to provide Plaintiff with the names of the supervisory-level personnel who may have had access the video. If Thompson cannot obtain this information, his must explain why, providing a detailed explanation of his efforts to obtain the information and the reason his efforts were not successful. (*See* Interrogatory #4).

Defendants have until **February 8, 2023,** to provide notice to the Court detailing

the date the discovery documents starting with a 3 or a 4 were sent to Plaintiff. If the documents have not been sent, then Defendants shall mail the documents to Plaintiff and file a certificate of compliance with the Court.

The Motion for Audio Depositions and the Motion to Expand Discovery are **DENIED.** (Doc. 146; Doc. 153).

**IT IS SO ORDERED.**

**DATED: January 25, 2023**

/s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**