**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **BRIAN JONES #K56957,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 19-CV-1307-SMY** |
| | ) | |
| **MAC-SHANE FRANK, et al,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## AMENDED MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Now pending before the Court is the Motion for Summary Judgment filed by Defendants Mac-Shane Frank, Heck, Frank Lawrence, Warden Love, C/O Rodman, Diane Skorch, Billy Stanhouse, Scott Thompson, Wangler (Doc. 168), which Plaintiff Brian Jones opposes (Doc. 175). For the following reasons, the motion is **GRANTED in part**.

### Factual Background

The following material facts are undisputed unless otherwise noted: During the relevant periods from November 2016 to September 2019, Defendants were staff members of Pinckneyville Correctional Center, and Jones was an inmate at the facility.

On April 30, 2019, Pinckneyville had Jones move houses.  He had been at his previous house for two years, so he had "a lot of stuff" (Doc. 169-1 at 12:22-24).  Prison rules mandated that inmates could possess personal property, but it must fit into a box (Doc. 169-1 at 15:3-6). Jones testified that Defendant Wangler told him that he only had 15 minutes to fit his property into a box and threw some of the things out of the box despite them fitting (Doc. 169-1 at 13:5-22). Wangler took the "majority of everything out" and Jones had to pay over $70 to send the remaining property to his home (Doc. 169-1 at 15:17-16:8).  Jones' family received the property (Doc. 169-

1 at 16:9-14).   Jones testified that Wangler did this because of retaliatory intent, and that he continued to harass him by telling other officers that he was "continuously" filing grievances against him (Doc. 169-1 at 18:1-19:24).

Jones objected to his treatment at Pinckneyville and requested, in writing, an investigation from "the governor, director, state representative, the head of [Internal Affairs] in Springfield" (Doc. 169-1 at 19:8-14). Jones testified that he filed grievances which drew Mac-Shane Frank's attention.

Pinckneyville placed Jones on investigative hold status from August 16, 2019 to August 29, 2019 (Doc. 169-4, p. 1).  Jones describes this hold as "disciplinary segregation" in "the hole" with limited yard hours, no television, and "just sitting in the cage" (Doc. 169-1 at 23:21-24:4). Mac-Shane Frank had transferred Jones to segregation, where he told Jones that if he kept filing grievances, he would be held accountable (Doc. 169-1 at 25:17-26:20).  Jones was released from segregation the next day (Doc. 169-1 at 26:19-20).

In response to Jones' grievances, IDOC sent investigator Stanhouse to investigate and speak with Jones (Doc. 169-1 at 27:5-25).  Stanhouse interviewed several of the defendants and prisoners.  Jones accuses Stanhouse of being biased and states his final report is inaccurate (Doc. 169-1 at 28:1-29:4).

On or about September 3, 2019, Defendant Rodman from Internal Affairs wrote a disciplinary report for Jones that charged him with Security Threat Group or Unauthorized Organizational Leadership for Jones' leadership position within a prison gang, the Black P. Stones (Doc. 169-5).[1]   According to Jones, Rodman wrote this "fabricated" disciplinary report in retaliation for his grievances (Doc. 169-1 at 30:12-20).

---

[1] The report is heavily redacted (and was not filed under seal) but notes that confidential sources substantiated Jones' association with the group (Doc. 169-5, p. 2).

Pinckneyville held a hearing on the September 3, 2019 disciplinary report that Jones attended (Doc. 169-1 at 31:11-12). Defendant Heck was the chairperson of the Adjustment Committee and Defendant Skorch was present (Doc. 169-1 at 31:13-15). Defendant Skorch did not speak but signed off on the finding of guilty (Doc. 169-1 at 35:8-16). Jones presented his defense but did not recognize all the confidential sources and did not believe that Defendant Heck would follow up on his questions (Doc. 169-1 at 32:11-25). According to Jones, Defendants Heck, Skorch, Warden Love, and Warden Thompson all had issues with Jones' grievances and that was the reason that he was found guilty of the charges in the disciplinary report (Doc. 169-1 at 31:23-33:4).

The Adjustment Committee's Final Summary Report summarizes the hearing as follows: Jones pled not guilty and told the Committee that, "I'm not a leader, I'm not around these inmates and I don't even know them. I have no idea about orders the confidential source is a liar. This is retaliation by Internal Affairs" (Doc. 169-7, p. 1). But Rodman noted that multiple Confidential Sources were "deemed reliable due to consistencies in the description of the event stated" and they confirmed that Jones was a high-ranking leader of the organization (Doc. 169-7, p. 1). Jones was found guilty and received punishment, including 6 months of segregation and a disciplinary transfer (Doc. 169-7, p. 1).

On September 25, 2019, following the guilty findings, IDOC transferred Jones to Menard Correctional Center (Doc. 169-2, p. 1). According to an affidavit submitted by Defendant Thompson, when a prisoner like Jones is found guilty of a gang affiliation, he or she is transferred to a higher security prison for security reasons (Doc. 169-9 at ¶¶ 3, 6). Transfer determinations are not made by prison personnel but by the Transfer Coordinator in Springfield (Doc. 169-9 at ¶ 7).

Jones testified that once at Menard, he suffered from a "pink phase policy," where prison staff denied him showers and hygienic items upon arrival at the prison (Doc. 169-1 at 47:1-48:10). He further testified that this was caused by Defendant Lawrence, although he never spoke with Lawrence or saw him during this time (Doc. 169-1 at 49:6-21). Jones based his understanding that Defendant Lawrence implemented this policy on what an unnamed officer told him (Doc. 169-1 at 50:8-19).

### Discussion

Jones filed the instant lawsuit pursuant to 42 U.S.C. § 1983 (Doc. 1). Following the initial screening (Doc. 20), he is proceeding on the following claims relevant to the summary judgment motion:

Count 2: First Amendment claim against Wangler for taking Plaintiff's property in retaliation for Plaintiff failing to provide any gang information to Linn.

Count 3: First Amendment claim against Wangler for harassing Plaintiff in retaliation for Plaintiff filing grievances and writing letters to government and IDOC officials.

Count 4: First Amendment claim against Mac-Shane Frank for placing Plaintiff in segregation under investigation in retaliation for Plaintiff filing grievances and writing letters to government and IDOC officials.

Count 5: First Amendment claim against Stanhouse for failing to investigate Plaintiff's complaints in retaliation for Plaintiff filing grievances and writing letters to government and IDOC officials.

Count 6: First Amendment claim against Rodman for filing a false disciplinary charge and against Heck and Skorch for finding Plaintiff guilty of the charge in retaliation for Plaintiff filing grievances and writing letters to government and IDOC officials.

Count 7: First Amendment claim against Love and Thompson for a retaliatory transfer to Menard.

Count 9: Fourteenth Amendment due process claim against Rodman for a false disciplinary ticket and Heck, Skorch, Love, and Thompson related to disciplinary proceedings in which Plaintiff's witnesses were not called, he was denied an impartial adjustment committee, his exculpatory evidence

was ignored, and the evidence was not sufficient to support the guilty finding.

Count 11:     Eighth Amendment conditions of confinement claim against Lawrence for his pink phase policy that denied Plaintiff showers and yard time.

(Doc. 20, pp. 7-8).

Summary judgment is proper only if the moving party can demonstrate that there is no genuine issue as to any material fact or if the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986). Any doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Lawrence v. Kenosha County,* 391 F.3d 837, 841 (7th Cir. 2004).

**Counts 2 and 3: First Amendment Claim against Defendant Wangler**

Jones claims that Wangler took away his property as retaliation for not having information for prison staff and continued to harass him as a result. A prison official who acts in retaliation for a prisoner's exercise of a constitutional right violates the Constitution. *DeWalt v. Carter,* 224 F.3d 607, 618 (7th Cir. 2000). To prevail on a First Amendment retaliation claim, a plaintiff must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was "at least a motivating factor" in the defendant's decision to take the retaliatory action. *Bridges v. Gilbert,* 557 F.3d 541, 546 (7th Cir. 2009). A plaintiff "must present something by which a jury could connect the dots between" the protected activity and the adverse treatment to make his prima facie showing of causation. *Roger Whitmore's Auto Services, Inc. v. Lake County, Ill.* 424 F.3d 659, 669 (7th Cir. 2005). If the plaintiff makes the prima facie showing,

the burden shifts to the defendant to rebut the causal inference raised by Plaintiff's evidence. *Mays v. Springborn*, 719 F.3d 631, 634 (7th Cir. 2013).

Even considering favorable inferences from Jones' testimony, there is no evidentiary link between Wangler's actions with respect to his property and protected speech. While Wangler may have acted inappropriately in removing items from Jones' box and requiring him to send items home, Jones' mere speculation that Wangler's actions were motivated by his grievances cannot defeat summary judgment. *Trade Fin. Partners, LLC v. AAR Corp.,* 573 F.3d 401, 407 (7th Cir. 2009) ("inferences relying on mere speculation or conjecture will not suffice"). Likewise, while Wangler may have been rude and verbally abusive to Jones, verbal harassment generally does not amount to First Amendment protections. *Bridges,* 557 F.3d at 552. As such, Wangler is entitled to summary judgment on Counts 2 and 3.

### Count 4: First Amendment Claim against Defendant <u>Mac-Shane Frank</u>

Jones alleges that <u>Mac-Shane Frank</u> placed him in investigative segregation in August 2019 because he wrote too many grievances. The First Amendment "prohibits government officials from subjecting an individual to retaliatory actions for engaging in protection speech." *Nieves v. Barlett*, 139 S.Ct. 1715, 1722 (2019). Plaintiff must make prima facie showing of retaliation by producing evidence that his speech was at least a motivating factor of the decision to take adverse action. *Kidwell v. Eisenhauer,* 679 F.3d 957, 966 (7th Cir. 2012). Plaintiff's testimony that <u>Mac-Shane Frank</u> told him he would be held accountable for filing grievances, and that he was released from the segregation on the day after this conversation, is sufficient to create a material issue of fact regarding <u>Mac-Shane Frank's</u> motivation. A reasonable jury could believe Plaintiff's account of this conversation and "connect the dots" between the grievances and the duration of the segregation.

Defendants cite several cases from this District in which segregation was found not to be a deprivation likely to deter First Amendment activity. However, in those cases, there was limited or no evidence regarding the conditions of the segregation. *Pendegraft v. Butalid*, Case No. 15-cv-816-NJR-DGW, 2018 WL 1565613, at *14-15 (S.D. Ill. Mar. 30, 2018) (placement in segregation for a week and a half without any evidence as to the conditions in segregation insufficient to demonstrate a deprivation likely to deter a person of ordinary firmness from engaging in protected activity). In this case, Jones testified that during his investigative segregation, he was in the "hole" for "24 hours a day, every day" and "just sitting in a cage" (Doc. 169-1 at 23:24-24:4). A reasonable jury could find that such conditions were likely to deter Plaintiff from exercising his right to file grievances.[2] Accordingly, summary judgment will be denied as to Count 4 against Defendant <u>Mac-Shane Frank</u>.

### Count 5: First Amendment Claim Against Defendant Stanhouse

Jones alleges that Stanhouse's investigation of his complaints was inadequate and that he violated his First Amendment rights by not doing a proper investigation. But Jones did not have a protected constitutional interest in the investigation's outcome. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("[prison] grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause, and so the alleged mishandling of [the plaintiff's] grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim). And Plaintiff's dissatisfaction with the outcome of the investigation did not rise to the level of a deprivation likely to deter free speech.

---

[2] Such administrative segregation is not considered an "atypical" hardship of prison life, and the Seventh Circuit has concluded that "inmates have no liberty interest in avoiding transfer to discretionary segregation." *Lekas v. Briley,* 405 F.3d 602, 608-609 (7th Cir. 2005). But such caselaw is rooted in Fourteenth Amendment claims and not the First Amendment retaliation at issue here.

*Burlington Northern & Sante Fe Railway Co. v. White*, 548 U.S. 53, 67-68 (2006).  Accordingly, summary judgment will be granted to Defendant Billy Stanhouse on Count 5.

### Count 6: First Amendment Claims Against Defendants Rodman, Heck, Skorch

Jones alleges that Rodman fabricated his disciplinary report for gang affiliation because he wrote too many grievances and that Defendants Heck and Skorch found him guilty of the allegations in the disciplinary report for the same reason.[3]  To establish a retaliation claim, Jones must provide evidence "that he engaged in protected First Amendment activity, suffered a deprivation that would likely deter future First Amendment activity, and the First Amendment activity was a motivating factor in the defendant's decision to take the retaliatory action." *Walker v. Groot,* 867 F.3d 799, 803 (7th Cir. 2017).

Jones believes the disciplinary report and findings of guilty were false and motivated by retaliatory motive, as "the ticket itself was such a farce and it had nothing to do with him" (Doc. 169-1 at 41:13-23) and he testified that the entire ticket was fabricated and that the confidential sources were "lying" (Doc. 169-1 at 32:19-24).  Even though the Court "must assume the truth of the non-moving party's evidence on summary judgment . . . that duty 'does not extend to drawing inferences that are supported by only speculation or conjecture.'" *Swetlik v. Crawford,* 738 F.3d 818, 829 (7th Cir. 2013).

Aside from Jones' speculation regarding Defendants' state of mind, he points to no evidence that could be "put in an admissible form at trial, and that, if believed by the fact-finder, could support judgment in his favor." *Marr v. Bank of Am., N.A.,* 662 F.3d 963, 966 (7th Cir. 2011). See also, *Adams v. Reagle*, 91 F.4th 880, 888 (7th Cir. 2024) ("There is no record evidence,

---

[3] Jones appears to be trying to invalidate the results of his disciplinary hearing, but this Count cannot be dismissed on that basis because no Good Conduct Credit was revoked.  In *Antoine v. Ramos,* 497 F. App'x 631 (7th Cir. 2012), the Seventh Circuit explained that, "[*Heck v. Humphrey,* 512 U.S. 477 (1994)] has no application to an inmate who was punished only with segregation," and the "contention that the disciplinary ticket was fabricated in retaliation for engaging in protected speech therefore is properly within the scope of a § 1983 suit." *Id.* at 634.

apart from [plaintiff's] protestations, supporting a reasonable inference that [defendant] knew that [plaintiff] was innocent of any involvement with the assault and did not honestly believe in the veracity of his own report"). For these reasons, summary judgment will be granted to Defendants on Count 6.

### Count 7: First Amendment Claim Against Defendants Love and Thompson

Jones alleges that as a retaliation for his grievances, Defendants Love and Thompson had him transferred to Menard. Jones' claim is based on the timing of his transfer. He testified that he believes the signatures of Love and Thompson were on the transfer form and waiting for him prior to his disciplinary report (Doc. 169-1 at 40:8-14).

For suspicious timing to raise an inference of causation, the "adverse action must follow close on the heels of the protected expression, and the plaintiff must show that the person who took the adverse action knew of the protected conduct." *Kidwell,* 679 F.3d at 966. The plaintiff must also show that "events would have transpired differently absent the retaliatory motive." *Babcock v. White,* 102 F.3d 267, 275 (7th Cir. 1996).

At the time of his transfer, Jones had just been found guilty by the Adjustment Committee of gang involvement. As Thompson avers in his Declaration, it was standard IDOC procedure to have gang affiliated inmates transferred prisons, and such decisions were made in Springfield by the Transfer Coordinator. Therefore, Jones cannot show that his transfer would not have occurred absent retaliatory motive, and summary judgment will be granted on Count 7.

### Count 9: Fourteenth Amendment Claim Against Defendants Rodman, Heck, Skorch

Jones alleges that Rodman, Heck, and Skorch denied him due process during the disciplinary proceedings by limiting his right to call witnesses, ignoring his exculpatory evidence, and finding him guilty despite insufficient evidence. To establish a procedural due process claim, a plaintiff must show that (1) "he has a liberty or property interest that the state has interfered with;

and (2) the procedures he was afforded upon that deprivation were constitutionally deficient." *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007).

An inmate's liberty interests are protected by the Due Process Clause only insofar as a deprivation of the interest imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In determining whether segregation amounts to a constitutional violation, a court must examine the length of a prisoner's confinement in segregation alongside the conditions he endured there. *Kervin v. Barnes*, 787 F.3d 833, 836-37 (7th Cir. 2015). Even months in segregation may not amount to a deprivation of a liberty interest. *Whitford v. Boglino,* 63 F.3d 527, 533 (7th Cir. 1995) (six months of segregation on its own not enough to state a claim). The imposition of disciplinary segregation without "additional facts about the conditions of confinement, [does] not implicate a liberty interest." *Miller v. Maue*, 759 F. App'x 515, 516 (7th Cir. 2019). See also, *Williams v. Ramos,* 71 F.3d 1246, 1249 (7th Cir. 1995) (Due Process Clause "does not necessarily protect prisoners against the imposition of disciplinary segregation").

Here, Jones spent six months in disciplinary segregation, which by itself does not create an atypical hardship or a protected liberty interest. *Id.* But Jones testified that, "Disciplinary segregation is traumatizing. Literally, just go in your closet right now, close it behind you, and sit there for six months straight . . . . It was traumatizing." (Doc. 169-1 at 53:15-19). Crediting Jones' account that he was traumatized by being so isolated for six months, this Court finds there is an issue of fact as to whether this segregation imposed an atypical hardship.

Jones must also establish that the disciplinary procedures were constitutionally deficient. In the context of disciplinary proceedings, due process requires that prisoners be afforded "(1) advance (at least 24 hours before hearing) written notice of the claimed violation; (2) the opportunity to be heard before an impartial decision maker; (3) the opportunity to call witnesses

and present documentary evidence (when consistent with institutional safety); and (4) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action." *Rasheed-Bey v. Duckworth,* 969 F.2d 357, 361 (7th Cir. 1992); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-572 (1974). The disciplinary decision must be supported by "some evidence." *Black v. Lane,* 22 F.3d 1395, 1402 (7th Cir. 1994). Even a meager amount of supporting evidence is sufficient to satisfy this inquiry. *Scruggs,* 485 F.3d at 941.

Jones was given a written copy of the disciplinary report and granted a hearing. While he did not recognize all the confidential sources and may not have had much opportunity to cross-examine them, the seriousness of the allegations and prison security concerns militated against it. *Mendoza v. Miller,* 779 F.2d 1287, 1293 (7th Cir. 1985) (a prison disciplinary board may keep the names of confidential informants secret as revealing them could lead to "death or serious injury of . . . the informants"). Following the hearing, Jones received a detailed "basis for decision" explanation that was only redacted to remove the names of the sources (presumably for these prison security purposes) (Doc. 169-7, p. 1). The "basis for decision" explained that Heck found the confidential sources to be reliable due to corroborating and consistent testimony. *Whitford v. Boglino,* 63 F.3d 527, 535-536 (7th Cir. 1995). Jones disagrees with the findings, but they are supported by "some evidence." The Court will not "assess the comparative weight of the evidence" that led to the disciplinary decision. *Webb v. Anderson,* 224 F.3d 649, 652 (7th Cir. 2000). Defendants are granted summary judgment on Count 9.

### Count 11: Eighth Amendment Claim Against Defendant Lawrence

Jones alleges that when he arrived at Menard, he suffered from a "pink phase policy" by which he was denied showers and hygienic items. Such denials can form the basis of an Eighth Amendment conditions of confinement claim. *Johnson v. Pelker,* 891 F.2d 136, 139 (7th Cir. 1989). But personal involvement by a defendant is necessary to find that defendant liable. *Kuhn*

*v. Goodlow,* 678 F.3d 552, 555-556 (7th Cir. 2012) ("An individual cannot be held liable in a [Section] 1983 action unless he caused or participated in an alleged constitutional deprivation"). Apart from Jones' speculation, there is no evidence in the record that Lawrence was personally involved in the decisions to deny him showers or hygienic items. In fact, Jones concedes that he never spoke with Lawrence or met with him regarding these conditions. Accordingly, Lawrence will be granted summary judgment on Count 11.

### Qualified Immunity

Defendants move for qualified immunity on any claims that survive summary judgment, arguing that they did not violate clearly established rights. Governmental officials are protected from civil liability when performing discretionary functions under the doctrine of qualified immunity so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982); *see also Alvarado v. Litscher,* 267 F.3d 648, 652 (7th Cir. 2001). For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Estate of Escobedo v. Bender,* 600 F.3d 770, 779 (7th Cir. 2010), quoting *Hope v. Pelzer,* 536 U.S. 730, 739 (2002).

A court should not define "clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). Instead, "whether the violative nature of *particular* conduct [should be] clearly established" to the facts of the case. *Id.* In the absence of controlling authority (a "closely analogous case"), a plaintiff can show that the defendant's conduct was "so egregious and unreasonable that . . . no reasonable official could have thought he was acting lawfully." *Abbott v. Sangamon County, Illinois*, 705 F.3d 706, 723-724 (7th Cir. 2013). See also, *Figgs v. Dawson*, 829 F.3d 895, 905 (7th Cir. 2016) (law is clearly established when courts have agreed that conduct is a constitutional violation under facts not distinguishable to the instant case).

Analogous caselaw is not required, and even clear trends in the law may suffice. *Reed v. Palmer*, 906 F.3d 540, 547 (7th Cir. 2018).

The only claim surviving summary judgment is Count 4 against Defendant Lawrence is for retaliation. Thus, the question is whether a reasonable official would understand that he violated Jones' rights by having him placed in segregation for filing too many grievances. The Seventh Circuit has noted that confinement in segregation can violate First Amendment rights when done in retaliation. See, *Babcock v. White,* 102 F.3d 267, 275-276 (7th Cir. 1996). Furthermore, "retaliation against constitutionally protected conduct is actionable regardless of whether the defendant's actions independently violate the constitution. A prison official . . . would have been on notice that *any* retaliation, whatever its shape, could give rise to liability." *Id.* Therefore, Defendant Lawrence is not entitled to qualified immunity with respect to Count 4.

<u>Conclusion</u>

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 168) is **GRANTED on all Counts except Count Four**. The Clerk of Court is **DIRECTED** to enter judgment accordingly at the conclusion of this case. By separate order, the case will be set for a status conference to select a trial date. Plaintiff's Motion for Status (Doc. 183) is **TERMINATED as MOOT**.

**IT IS SO ORDERED.**

**DATED:  August 29, 2024**

**STACI M. YANDLE**
**United States District Judge**